# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REINA HERNANDEZ GONZALEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | Case No. 1:21-cv-01676-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

Plaintiff Reina Hernandez Gonzalez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   BACKGROUND

Plaintiff was born on September 6, 1963, completed high school, and previously worked as a fast food worker and nut sorter. (Administrative Record ("AR") 52–53, 69, 91, 106, 108, 130, 132, 377, 620–21.) Plaintiff filed a claim for DIB on May 29, 2018, alleging she became disabled on August 24, 2016, due to a back injury. (AR 21, 91–92, 108–10, 139, 164, 170, 175, 377.)

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 8.)

**A.     Relevant Evidence of Record[2]**

      **1.     Medical Evidence**

Plaintiff has a past medical history of rheumatoid arthritis. (AR 1670.) In September 2015, she presented to a rheumatologist and indicated she was taking Humira and Methotrexate for the condition. (AR 1670.) Plaintiff reported good control of her arthritis symptoms on this medication regimen and no major flareups. (AR 1670.) The provider noted Plaintiff had laboratory tests with positive rheumatoid factor, a positive anti-CCP, and a positive SSA antibody. (AR 1670.) Pursuant to an examination, the provider noted there was no visible synovitis in Plaintiff's joints. (AR 1672.) Plaintiff was directed to continue with her medications, update her laboratory tests, and return in two months for a follow-up. (AR 1672.)

At the follow-up appointment, Plaintiff continued reporting satisfaction with her current regimen and no major flareups. (AR 1674.) She stated that she was using hydrocodone up to twice a day for breakthrough joint pain. (AR 1674.) Her updated laboratory tests were within normal limits. (AR 1674.) In January 2016, Plaintiff reported good control of her symptoms with medication and no major flareups, and her laboratory tests continued to be normal. (AR 1678.)

In March 2016, Plaintiff reported residual stiffness in her third fingers bilaterally, but otherwise, she indicated she was doing better. (AR 1682.) The provider noted that her last laboratory tests indicated her Vitamin D level was somewhat low. (AR 1682.) The provider diagnosed Plaintiff with a Vitamin D deficiency and adjusted her medications, noting that she had already started taking a Vitamin D replacement. (AR 1685–86.) By April 2016, Plaintiff indicated she had stable control of her arthritis symptoms. (AR 1687.)

In July 2016, Plaintiff reported that she ran out of Methotrexate three weeks prior and her pain had gotten worse. (AR 1691.) She explained that her pain was under fair control when she was taking the Methotrexate. (AR 1691.) The provider refilled her prescription for Methotrexate (AR 1692), and when Plaintiff returned in August 2016, she indicated the current regimen continued to result in good control of her symptoms (AR 1693).

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

Though Plaintiff reported hurting her back at work around August 2016, as for her rheumatoid arthritis, Plaintiff continuously indicated stable control of her symptoms on the current medication regimen over the following few years. (AR 1693, 1697, 1701, 1704, 1706, 1710–14, 1718.) For example, an x-ray of Plaintiff's hands and wrists taken in October 2018 revealed no osseous erosion, no significant arthropathy or acute abnormality, and no visible soft tissue swelling. (AR 1806–07.) By September 2019, the provider noted Plaintiff had normal gait and no synovitis was visible. (AR 2232.)

### 2. Opinion Evidence

In September 2018, Leslie E. Arnold, M.D., a state agency physician, reviewed the record and assessed Plaintiff's residual functional capacity (RFC).[3] (AR 103–07.) Dr. Arnold opined, *inter alia*, that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently. (AR 103, 105.) Dr. Arnold also opined that Plaintiff could sit, stand, and walk for six hours out of an eight-hour day, and she could frequently climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. (AR 103–05.) Dr. Arnold further opined that Plaintiff could occasionally climb ladders, ropes, or scaffolds. (AR 104–05.)

Upon reconsideration, another state agency physician, D. Tayloe, M.D., reviewed the record and agreed with Dr. Arnold's assessments. (*See* AR 125–28, 131.)

## B. Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on September 14, 2018, and again on reconsideration on January 10, 2019. (AR 107–08, 131–32, 139, 164, 170, 175.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 182–83.) The ALJ conducted a hearing on July 23, 2020. (AR 63–90.) Plaintiff appeared at the hearing with her attorney representative and testified as to her alleged disabling conditions and work history.

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1  (AR 69–83.)  In a decision dated August 18, 2020, the ALJ rejected Plaintiff's application for DIB
2  payments, assessing an RFC of medium work with additional mental and physical restrictions.  (AR
3  133–56.)

4  Plaintiff appealed the adverse determination and on November 9, 2020, the Appeals Council
5  granted Plaintiff's appeal, remanding her claim for a new hearing.  (AR 157–63.)  The ALJ
6  conducted a hearing on April 1, 2021.  (AR 45–62.)  A Vocational Expert ("VE") testified at the
7  hearing.[4]  (AR 53–60.)

**C.  The ALJ's Decision**

In a decision dated April 15, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 21–35.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 23–35.)  The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2021, and she had not engaged in substantial gainful activity since August 24, 2016, the alleged onset date (step one).  (AR 23–24.)  At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative disc disease of the lumbar spine, rheumatoid arthritis, and depressive disorder.  (AR 24.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 25–27.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . .  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform a range of light work as defined in 20 CFR [§] 404.1567(b). [Plaintiff] would require work that entails routine, repetitive tasks and simple decision-making. [Plaintiff] could only lift or carry up to ten pounds frequently and twenty pounds occasionally. [Plaintiff] could stand or walk with normal breaks for a total of six hours in an eight-hour workday, and sit with normal breaks for a total of six hours in an eight-hour workday. She could perform pushing and pulling motions with her upper and lower extremities within the weight restrictions given. She

---

[4] Plaintiff appeared and testified only at the first hearing held by the ALJ.  (*See* AR 29, 69–83.)  Her attorney agreed to moving forward at the second hearing without her appearance.  (*See* AR 29, 47–48.)

>could perform postural activities frequently, and those would be climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling, but [Plaintiff] could only occasionally climb ladders, ropes, or scaffolds on the job.

(AR 27–34.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 29.)

The ALJ found that Plaintiff is capable of performing past relevant work as a fast food worker and nut sorter, and this work does not require the performance of work-related activities precluded by her RFC (step four). (AR 34.) The ALJ concluded that Plaintiff was not disabled from August 24, 2016, through the date of this decision. (AR 35.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 15, 2021. (AR 1–8.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

>In step one, the ALJ determines whether a claimant is currently engaged in

substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*,

253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ's RFC determination is unsupported by substantial evidence. (Doc. 14 at 15–20.) According to Plaintiff, the ALJ failed to "logically connect" the effects of her rheumatoid arthritis to the RFC determination, and instead relied on their lay interpretation of the evidence. (*Id*. at 15–16.) She asserts that none of the reviewing doctors rendered an opinion regarding the severity of her rheumatoid arthritis, and thus, the ALJ improperly substituted their own lay opinion for that of a medical professional. (*Id*. at 18–19.) Plaintiff further contends this gap in the evidence triggered the ALJ's duty to develop the record and obtain an opinion from an examining internist regarding the functionalist limitations resulting from rheumatoid arthritis. (*Id*. at 18–20.) Accordingly, Plaintiff asserts the matter should be remanded for further administrative proceedings. (*Id*. at 15, 20.)

The Acting Commissioner responds that Plaintiff failed to preserve her challenge to the incompleteness of the record for appeal because her counsel told the ALJ at the hearing that the

7

record was complete. (Doc. 15 at 4–6.) The Acting Commissioner contends, alternatively, that no duty to develop the record arose because the ALJ considered all of the evidence in the record, which was "complete" per counsel's representation, in assessing Plaintiff's RFC, and that no further development regarding Plaintiff's rheumatoid arthritis was required. (*Id*. at 7–12.) The Acting Commissioner maintains that the ALJ's RFC assessment was therefore based on substantial evidence supported from interferences reasonably drawn from the record and should be affirmed. (*Id*.)

The Court addresses the parties' contentions below, and finds that reversal is not warranted.

**A.     Legal Standard**

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). An ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin*., 613 F.3d 1217, 1222–23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity."). In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints. *See Batson v. Comm'r of Soc. Sec*., 359 F.3d 1190, 1197 (9th Cir. 2004). A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and [their] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

**B.     Analysis**

    **1.     Plaintiff's Challenge to the Incompleteness of the Record Has Not Been Preserved**

As a general rule, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Here, as the Acting Commissioner notes (*see* Doc. 15 at 4–6),

8

1  Plaintiff was represented by counsel at the administrative hearing—the same counsel who represents
2  her before this Court—who expressly stated that the record was complete when asked by the ALJ
3  (*see* AR 49 ("ATTY: . . . no outstanding medical evidence is requested by claimant.")). *See Meanel*,
4  172 F.3d at 1115; *Howard v. Astrue*, 330 F. App'x 128, 130 (9th Cir. 2009) (issue waived because
5  attorney had opportunity to raise it at administrative hearing but did not do so); *Ryan Patrick A. v.*
6  *Berryhill*, No. EDCV 17-2526-JPR, 2019 WL 1383800, at *7 (C.D. Cal. Mar. 27, 2019) (issue
7  forfeited where the plaintiff was represented by counsel at the administrative hearing, who twice
8  stated that the record was complete); *Valdez v. Berryhill*, No. SA CV 16-0980 JCG, 2018 WL
9  317799, at *1 (C.D. Cal. Jan. 5, 2018) (issue not properly preserved where the plaintiff was
10 represented by counsel at the administrative hearing and specifically stated he had "no objection" to
11 the record when asked by the ALJ).  Here, because counsel stated that the record was complete, the
12 issue is not properly preserved for appeal.  *See Smith v. Saul*, No. 1:19-cv-01085-SKO, 2020 WL
13 6305830, at *7 (E.D. Cal. Oct. 28, 2020); *Karl v. Kijakazi*, No. 1:21-cv-01576-SKO, 2023 WL
14 3794334, at *4–5 (E.D. Cal. June 1, 2023).

### 2. The ALJ Had No Duty to Develop the Record

Even if the issue had not been forfeited, *cf. Balli v. Comm'r of Soc. Sec.*, No. 1:21-CV-00645-EPG, 2022 WL 14751485, at *1 (E.D. Cal. Oct. 25, 2022), Plaintiff has not shown that remand is warranted. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford,* 950 F.3d at 1156; *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).  Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation. The ALJ summarized record evidence spanning 2015 through 2020 and found that Plaintiff had not established she was disabled.  (AR 24–34.)  The record contained what appears to be Plaintiff's complete treatment records that supported the ALJ's findings and did not present an ambiguity or inadequacy. That the ALJ did not obtain a consultative examination regarding Plaintiff's rheumatoid arthritis is not, as Plaintiff advances, an indication that the record was deficient, as such decisions are well within the ALJ's discretion. *See Pederson v. Colvin*, 31 F. Supp. 3d 1234, 1244 (E.D. Wash. 2014) ("[T]he Commissioner 'has broad latitude in ordering a consultative examination.'") (quoting

*Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001)); *see, e.g., Albrecht v. Astrue*, No. 1:11–cv–01319 GSA, 2012 WL 3704798, at *12 (E.D. Cal. Aug. 27, 2012) (consultative examination regarding Plaintiff's impairments "not necessary" where the existing evidence was sufficient to support the ALJ's determination and such an exam was not needed to resolve an inconsistency).

Notably, Plaintiff failed to submit any medical opinions from a treating or examining physician as to her ability to work or her functional limitations related to her rheumatoid arthritis. Because it is Plaintiff's burden to present evidence of disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record; instead, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss*, 427 F.3d at 1217; *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512 ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled."). The record contained Plaintiff's complete treatment records, as counsel conceded at the hearing (*see* AR 49), and no "gaps" or inconsistencies were noted. *See, e.g., Findley v. Saul*, No. 1:18-cv-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (finding the ALJ was not obligated to further develop the record where counsel stated at the hearing that the record was complete); *accord Karl*, 2023 WL 3794334, at *4–5. In the absence of any inadequacy or ambiguity in the record, which Plaintiff has not shown, the ALJ had no duty to develop it further.

**3.    The ALJ Did Not Harmfully Err in Formulating Plaintiff's RFC**

Plaintiff's primary criticism of the ALJ's RFC assessment is her claim that it was the result of the ALJ improperly imposing their own lay interpretation of the medical evidence. (*See* Doc. 14 at 15–19.) This argument is unavailing. The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

10

1995). Such a responsibility does not result in the ALJ committing legal error when they assess an RFC that is consistent with the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13–cv–0899–KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)) (emphasis in original).

Here, both state agency physicians opined that Plaintiff could frequently climb ramps and stairs, balance, stoop, kneel, crouch, or crawl, and she could occasionally climb ladders, ropes, or scaffolds. (AR 103–05, 125–28.) In the August 2020 decision, the ALJ determined that Plaintiff's rheumatoid arthritis was a severe impairment. (AR 142.) The ALJ then assessed an RFC of medium work with additional restrictions, including the specific physical restrictions opined by the state agency physicians. (AR 144.) On remand, the ALJ again found Plaintiff's rheumatoid arthritis to be a severe impairment (AR 24), but then assessed Plaintiff for a more restrictive RFC of light work. (AR 27; *compare* AR 103–05, 125, 127 (state agency physicians opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently) *with* AR 27 (ALJ's RFC determination specified that Plaintiff could only lift or carry up to 10 pounds frequently and 20 pounds occasionally).) Though the ALJ found the opinions of the state agency physicians to be "persuasive," which Plaintiff does not challenge, the ALJ explained that they further restricted Plaintiff to light work because the "reduced strength in her upper extremities on occasion [was] inconsistent with medium work." (AR 31–32.) In formulating Plaintiff's RFC, the ALJ, as they are charged to do, interpreted that evidence in conjunction with other longitudinal evidence in the record, such as consistent medical records showing that Plaintiff's rheumatoid arthritis was effectively controlled with medication and she repeatedly had no major flare ups. (*See* AR 31 (citing 1670, 1672, 1674, 1678, 1682, 1685–87, 1691–93, 1697, 1699, 1701, 1704, 1706, 1710–14, 1718, 1806–07, 2232).)

The ALJ was entitled to review and interpret the above evidence regarding the progression of Plaintiff's rheumatoid arthritis and the successful treatment of her symptoms with treatment. This evidence provided the ALJ with sufficient support for their RFC determination. *See, e.g., Ann M. v.*

11

1  *Berryhill*, No. 5:18-cv-01080-KES, 2019 WL 1171160, at *6 (C.D. Cal. Mar. 12, 2019) ("Contrary
2  to the cases cited by Plaintiff, the records in this case provided the ALJ with ample support for his
3  RFC, which was based not on raw data but on treatment notes, [which] included Plaintiff's subjective
4  complaints, observations by . . . physicians, and the treatment plans . . . .") (internal quotation marks
5  omitted); *see also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity
6  based on all the relevant evidence in your case record."). The ALJ's assessment of an RFC that is
7  consistent with the record does not constitute an imposition of the ALJ's lay interpretation of the
8  medical evidence. *See Mills,* 2014 WL 4195012, at *4 n.8 (finding argument that the ALJ was
9  improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various
10 medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."); 20
11 C.F.R. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual
12 functional capacity.").

13         Plaintiff also fails to specify what additional functional limitations the record might establish
14 that were not accounted for in the ALJ's RFC assessment and how such limitations would eliminate
15 all jobs in the national economy that Plaintiff could have performed. Nor does Plaintiff otherwise
16 show any inconsistency between the record and her RFC. To the contrary, as discussed above, the
17 ALJ's decision makes clear that they expressly considered the medical evidence regarding Plaintiff's
18 rheumatoid arthritis and determined this condition was a severe impairment. (AR 24, 31.) The ALJ
19 then formulated a more restrictive RFC on remand than that opined by the state agency physicians,
20 whose opinions the ALJ found to be persuasive, in order to accommodate Plaintiff's occasional
21 reduced strength in the upper extremities. (*See* AR 31–32.) "Indeed, [P]laintiff can hardly fault the
22 ALJ for giving [her] the benefit of the doubt and assessing an RFC that is more favorable to
23 [P]laintiff than most of the medical opinions in the record." *Mills*, 2014 WL 4195012, at *4; *accord*
24 *Pinto v. Kijakazi*, No. 1:21-cv-00585-SKO, 2022 WL 17324913, at *10–11 (E.D. Cal. Nov. 29,
25 2022) (finding substantial evidence supported the ALJ's conclusions regarding the impact of
26 Plaintiff's impairments on the RFC). To the extent Plaintiff is advocating for an alternative
27 interpretation of the evidence in the record, the Court will not second guess the ALJ's reasonable
28 interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff. *See*

*Molina*, 674 F.3d at 1110.

In sum, the Court finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's impairments on the RFC. Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### V.   CONCLUSION AND ORDER

After consideration of Plaintiff's and the Acting Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:  **September 20, 2023**                    /s/ *Sheila K. Oberto*
                                                               UNITED STATES MAGISTRATE JUDGE